UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE A. MITCHELL,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. C14-1189-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Stephanie A. Mitchell seeks review of the denial of her Disability Insurance Benefits application. She contends the ALJ erred by (1) finding she could reach overhead occasionally with her left arm, (2) presenting a hypothetical to the vocational expert that included the need to be off task for 20 percent of the workday, (3) finding that she could work as a housekeeper given her need for a job that can be performed either sitting or standing, and (4) failing to comply with Social Security Ruling (SSR) 00-4p. Dkt. 13. For the reasons discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Ms. Mitchell is currently 50 years old, has a high school education, and has worked as a nursing assistant and a hand packer. Tr. 79-80, 182. On December 4, 2011, she applied for benefits, alleging disability as of October 7, 2007. Tr. 182. After her application was denied

REPORT AND RECOMMENDATION - 1

initially and on reconsideration, the ALJ conducted a hearing and, on March 22, 2013, issued a decision finding her not disabled. Tr. 25-40. The Appeals Council denied Ms. Mitchell's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Ms. Mitchell had not engaged in substantial gainful activity since the alleged onset date; she had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the right ankle, obesity, hidradenitis supperativa of both axilla and the groin, rectovaginal fistula, post-traumatic stress disorder (PTSD), major depressive disorder, pain disorder with psychological and medical causes, and personality disorder NOS; and these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 28-30. The ALJ found that Ms. Mitchell had the residual functional capacity to perform light work, except that she was limited to jobs that could be performed sitting or standing so she could alternate between sitting or standing, without being off task more than 10% of the work period; she could occasionally climb ramps or stairs; she could never climb ladders, ropes, or scaffolds; she could frequently balance and occasionally stoop, kneel, crouch, or crawl; her overhead reaching of the left upper extremity was limited to occasionally; she should avoid concentrated exposure to excessive vibration and workplace hazards such as dangerous machinery and unprotected heights; she could perform simple to moderately complex tasks with occasional, superficial interaction with the public; she required normal or standard access to a restroom facility at the work site and she could leave the workstation briefly to use the restroom. Tr. 32. The ALJ found that Ms. Mitchell could not perform her past relevant work, but she could perform other jobs that exist in significant numbers

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

in the national economy.  Tr. 39.  The ALJ therefore found Ms. Mitchell not disabled.  Tr. 40.

## DISCUSSION

### A.  Overhead reaching: Dr. Oguakwa's opinion

Ms. Mitchell argues that substantial evidence does not support the ALJ's finding that she can reach overhead occasionally with her left upper extremity, asserting that the ALJ erroneously interpreted the opinion of examining physician Ifesinachi Oguakwa, M.D.  Dkt. 13 at 4.  The ALJ must give specific and legitimate reasons for rejecting an examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting an examining doctor's opinion uncontradicted opinion.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

Dr. Oguakwa examined Ms. Mitchell in March 2012.  In discussing Ms. Mitchell's hidradenitis supperativa, Dr. Oguakwa noted that Ms. Mitchell needed a skin graft in her left axilla (arm pit) after a surgery, and noted Ms. Mitchell's description of "a burning, itchy, raw feeling in both axilla; now with restricted movement in the left upper extremity."  Tr. 766.  On physical examination, Dr. Oguakwa found abduction of the left shoulder limited to 90 degrees due to scarring from previous surgery, but noted that Ms. Mitchell denied any pain.  Tr. 768.  Dr. Oguakwa opined that Ms. Mitchell could perform medium work and, with respect to manipulative activities, she had "Limitations to the left hand if it is above shoulder; otherwise, no limitation."  *Id.*  The ALJ gave some weight to Dr. Oguakwa's opinion, but found that "a limitation to light work that can be performed either sitting or standing better accommodates the claimant's hidradenitis."  Tr. 36.

Ms. Mitchell asserts that, as normal shoulder abduction is 150 degrees, and Dr. Oguakwa found Ms. Mitchell could abduct her left shoulder only 90 degrees, Dr. Oguakwa's opinion that Ms. Mitchell has "limitations to the left hand if it is over the shoulder" means that Ms. Mitchell

is precluded from all over-the-shoulder reaching with her left arm. Dkt. 13 at 6. Ms. Mitchell argues that the ALJ thus erred by finding that she could occasionally reach overhead with her left arm and by placing no limitations on other over-the-shoulder reaching. Dkt. 13 at 6. The Court agrees. The ALJ gave some weight to Dr. Oguakwa's opinion, but failed to discuss the manipulative limitations the doctor opined or give a reason to reject them. In light of Dr. Oguakwa's exam findings and her opinion about limitations on over-the-shoulder reaching, the ALJ's finding that Ms. Mitchell could occasionally reach over her head was not supported by substantial evidence, nor was the lack of restriction on other over-the-shoulder reaching.

The Commissioner argues, however, that any error in the ALJ's assessment of Ms. Mitchell's reaching ability was harmless. Dkt. 14 at 3. The Commissioner concedes that according to the Dictionary of Occupational Titles (DOT), the three jobs the vocational expert identified as jobs a person could perform with a limitation to occasional overhead reaching with the left arm—cleaner/maid, basket filler, and cannery worker—require frequent to constant reaching. The Commissioner asserts, however, that the DOT uses "'reaching'" to mean "'extending hand(s) and arm(s) *in any direction*'" and argues that the general descriptions of the jobs at issue do not include work activity involving overhead reaching with the left arm. *Id.* at 3-4 (quoting *Selected Characteristics of Occupations*, app. C (1993) (emphasis in original)). The Commissioner argues, essentially, that even if Ms. Mitchell cannot perform any overhead reaching with her left arm, she can still perform the jobs identified by the vocational expert, thus rendering harmless any error in the ALJ's residual functional capacity assessment and step five finding.

However, the Commissioner's harmlessness argument is based on an assumption that the error in the ALJ's assessment of Dr. Oguakwa's opinion relates to overhead reaching, not to the

REPORT AND RECOMMENDATION - 4

more restrictive limitation on over-the-shoulder reaching Dr. Oguakwa actually opined.  The DOT does not distinguish between types of reaching or between bilateral and one-sided reaching, and it is not entirely clear whether the jobs requiring frequent or constant reaching involve over-the-shoulder reaching that would be incompatible with Ms. Mitchell's limitations.  Although the Commissioner asserts that the three jobs do not require overhead reaching with the left arm, the vocational expert did not provide clarity on this point, and certainly did not address the more restrictive limitations opined by Dr. Oguakwa.  Moreover, the Commissioner's assertions are not supported by the testimony of a vocational expert opinion, which is how the Commissioner must meet the burden of production at step five.  *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  Given all these considerations, the Court cannot say that the ALJ's error in assessing Dr. Oguakwa's opinion was harmless.

**B.     Time off task**

Ms. Mitchell argues that the ALJ's residual functional capacity assessment and hypothetical to the vocational expert, taken together, include a finding that Ms. Mitchell would be off task as much as 20 percent of the workday, a limitation that, according to the vocational expert's testimony, would be incompatible with ongoing employment. Dkt. 13 at 10.  The Commissioner responds that this argument misconstrues the hypothetical the ALJ posed to the vocational expert and that the ALJ did not in fact find that Ms. Mitchell would be off task 20 percent of the workday. Dkt. 14 at 5-6.

The ALJ included in her residual functional capacity assessment a finding that Ms. Mitchell "is limited to jobs that she can perform sitting or standing so she can alternate between sitting or standing, without being off task more than 10% of the work period." Tr. 32.  The ALJ also found that Ms. Mitchell "requires normal or standard access to a restroom facility at the

REPORT AND RECOMMENDATION - 5

work site and she can leave the workstation briefly to use the restroom." *Id.*

The ALJ discussed Ms. Mitchell's need for access to a restroom with the vocational expert at the hearing:

> Q      . . . the person would need to have reasonably ready access to a restroom. So it couldn't be, for example, out in a remote area or anything of that nature.
>
> . . .
>
> Q      All right.  And I will clarify that.  A standard access to a restroom that is there's a restroom available in the work place that, that a worker could use during breaks.  But also if someone needed to use a restroom they would be able to get up and leave their workstation to go and use a restroom.  Not excessively, not that they would be off task more than 10 percent, but that they would have access.
>
> A      Yes, that would, that would be acceptable in a typical situation as long as the worker did not exceed the amount and number of breaks that a normal worker would be expected to.

Tr. 82-83. After additional questioning by Ms. Mitchell's counsel, the ALJ again discussed the issue with the vocational expert:

> Q      I just want to clarify one thing on the bathroom breaks to make sure I understand what you're saying.  If, if it's a normal, brief bathroom break that's not necessarily on a scheduled break, but it doesn't take you off task more than, you know, five percent or something per day, that would be acceptable.  But if you're going to be going to the bathroom and you're going to be in there for 20, 30 minutes and it's, you know, ongoing and it takes you away so that you're off task, that would become problematic and you would not be able  to maintain employment without accommodation?
>
> A      Yes, ma'am.  And, of course, that would vary from employer to employer and situation to situation.  But I just – what a reasonable man would assume, or a reasonable person would assume.

Tr. 86-87.

The full exchange between the ALJ and the vocational expert shows that the ALJ was contemplating a need for brief, unscheduled restroom breaks, not recurrent 20-30 minute restroom breaks that would take Ms. Mitchell off task for a significant portion of the work day.

REPORT AND RECOMMENDATION - 6

The ALJ did not present a hypothetical to the vocational expert that included a need to be off task for 20 percent of the workday and, therefore, was not required to find Ms. Mitchell disabled for that reason.

### C. Cleaner/maid: need to alternate between sitting and standing

Ms. Mitchell argues that the ALJ erred by finding that she could work as a cleaner/maid because that job cannot be performed from either the sitting or the standing position, as the ALJ found Ms. Mitchell required. Dkt. 13 at 11. Ms. Mitchell asserts that many of the core duties of a housekeeper, such as carrying linens, making beds, or vacuuming floors, cannot be performed from the sitting position. *Id.* at 12. She argues, therefore, that the vocational expert's testimony that a person with this limitation could work as a cleaner/maid is "manifestly unreliable" and so unreasonable as to be not supported by substantial evidence. *Id.* The Court agrees that the job requirements of cleaner/maid are incompatible with a limitation to work that can be performed either sitting or standing. The vocational expert's testimony to the contrary, and the ALJ's finding based on it, is unreasonable not supported by substantial evidence.

The Commissioner argues, however, that the error was harmless, relying on the validity of the ALJ's finding that Ms. Mitchell could work as a basked filler or cannery worker. Dkt. 14 at 6. However, the Court has found that the ALJ erred in evaluating Ms. Mitchell's reaching limitation and that substantial evidence does not support the ALJ's step five finding with respect to all three jobs. Accordingly, the Court cannot find this particular error harmless.

### D. SSR 00-4p

Ms. Mitchell's final argument is that the ALJ failed to comply with SSR 00-4p because the vocational expert's testimony conflicted with the DOT, the ALJ failed to obtain an explanation for the conflict, and the ALJ failed to reconcile the conflict in the decision. Dkt. 13

REPORT AND RECOMMENDATION - 7

at 13.  Because the Court recommends remand for further proceedings, including a reevaluation of Dr. Oguakwa's opinion and Ms. Mitchell's residual functional capacity, the remand will necessitate additional vocational expert testimony, and the Court need not resolve this argument with respect to the previous testimony.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should reevaluate Dr. Oguakwa's opinion and Ms. Mitchell's ability to reach with her left arm, reevaluate Ms. Mitchell's residual functional capacity, and further develop the record and redo the five-step disability evaluation as appropriate.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **January 30, 2015**.  If no objections are filed, the matter will be ready for the Court's consideration on that date.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 16th day of January, 2015.

BRIAN A. TSUCHIDA
United States Magistrate Judge